DARIN D. SMITH
United States Attorney
JASMINE M. PETERS (WY Bar #7-5714)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2984
jasmine.peters@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| DAVITI LAPACHI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-00210-SWS |
| | ) | |
| PAMELA JO BONDI, U.S. Attorney General; | ) | |
| KRISTI NOEM, Secretary U.S. Department of | ) | |
| Homeland Security; ROBERT GUADIAN, | ) | |
| Denver Field Office Director ICE Enforcement and | ) | |
| Removal Operations; and JOHN HARLIN, | ) | |
| Sheriff, the Natrona County Detention Center, | ) | |
| Casper, Wyoming, | ) | |
| | ) | |
| Respondents. | ) | |

## UNITED STATES OF AMERICA'S RESPONSE BRIEF

Respondents Pamela Jo Bondi, United States Attorney General, Kristi Noem, Secretary of

the United States Department of Homeland Security, and Robert Guadian, Denver Field Office

Director of the ICE Enforcement and Removal Operations (United States of America), by and

through the United States Attorney for the District of Wyoming, and Assistant United States

Attorney Jasmine M. Peters, submits *United States of America's Response Brief.*

**INTRODUCTION**

On February 6, 2025, an Immigration Judge (IJ) ordered Petitioner Daviti Lapachi to be removed from the United States. The order was issued after the IJ properly conducted the removal proceedings and considered Lapachi's application for asylum and withholding of removal. Although the IJ denied Lapachi's application for asylum, the IJ granted the request to withhold removal. Effectively, the order precluded the United States from removing Lapachi to his country of origin. However, the order did not require Lapachi to be released from detention.

Currently, Lapachi is lawfully detained pursuant to the IJ's order of removal, and the United States Department of Homeland Security (DHS) is awaiting a response from the alternative countries for removal placement. Lapachi's continued detention under these circumstances does not violate due process. The Court should therefore deny his petition for habeas relief.

**BACKGROUND**

Lapachi is a native and citizen of Georgia. Ex. 1 at 1, ¶ 3 (Ketels Declaration). He entered the United States on July 23, 2024. *Id.* ¶ 4. Shortly after his entry into the United States, Lapachi was detained by the United States Immigration and Customs Enforcement (ICE) on July 29, 2024. *Id.* at 2, ¶ 7. Lapachi was initially housed at the Denver Contract Detention Facility, located in Aurora, Colorado. *Id.* ¶ 8.

After his detention, DHS initiated removal proceedings against Lapachi pursuant to the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq. Id.* at 1, ¶ 2. In an effort to avoid removal, Lapachi filed an application for asylum and a request to withhold removal. *See id.* at 2, ¶ 10. The IJ conducted the removal proceedings and issued an Order of the Immigration Judge (Order) on February 6, 2025. (*See* Doc. 1 at 10–13); Ex. 1 at 2, ¶ 11. The IJ found Lapachi inadmissible under the INA 212(a)(6)(A)(i). (Doc. 1 at 10); *see also* Ex. 1 at 2, ¶¶ 9, 11.

Accordingly, the IJ ordered Lapachi to be removed from the United States. (*See* Doc. 1 at 12); Ex. 1 at 2, ¶ 11. However, the IJ granted Lapachi's request for withholding of removal under the INA 241(b)(3), 8 U.S.C. § 1231(b)(3). (*See* Doc. 1 at 10); Ex. 1 at 2, ¶ 11. Both Lapachi and DHS reserved the right to appeal the IJ's Order but neither appealed the decision. (*See* Doc. 1 at 13); Ex. 1 at 2, ¶ 12. In July of 2025, Lapachi was transferred to the Natrona County Detention Center, located in Casper, Wyoming pending his removal. Ex. 1 at 2, ¶ 13. Lapachi was transferred from Colorado to Wyoming to avoid overcrowding issues at the Aurora, Colorado facility. *Id.* ¶ 14.

Since the IJ's Order granting the withholding of removal, DHS conducted two post-custody reviews of Lapachi's detention and has contacted different countries to determine if Lapachi may be removed to one of those locations. *Id.* at 3, ¶¶ 17–19. Currently, DHS is awaiting a response from the alternative countries, and Lapachi remains detained in Casper, Wyoming. *See id.* at 3, ¶¶ 16–20. Consequently, Lapachi filed this petition for habeas pursuant to 8 U.S.C. § 2241 on August 4, 2025, in the United States District Court for the District of Colorado. (*See* Doc. 1). The District of Colorado transferred this case to the United States District Court for the District of Wyoming on August 28, 2025. (*See* Doc. 3–5). On September 3, 2025, this Court ordered service on the United States and for the United States to respond to the petition. (Doc. 7).

**LEGAL FRAMEWORK**

### A.  *Habeas Corpus, 28 U.S.C. § 2241*

Habeas corpus is designed to challenge the reasons why a person may be held in custody. *See Rasul v. Bush*, 542 U.S. 466, 473–75 (2004) (discussing the history of a writ of habeas corpus); *Basri v. Barr*, 469 F. Supp. 3d 1063, 1067 (D. Colo. 2020) ("It provides recourse against arbitrary detention and arrest by the executive."). The United States Supreme Court has explained a writ of habeas corpus "stands as a safeguard against imprisonment of those held in violation of the law."

*Harrington v. Richter*, 562 U.S. 86, 91 (2011) (addressing the writ under Section 2254). The Court may grant a writ pursuant to Section 2241. *See* 28 U.S.C. § 2241(a). "The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the 'traditional function of the writ is to secure release from illegal custody.'" *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (citation omitted). However, it is only available under certain circumstances. *See* 28 U.S.C. § 2241(c). One circumstance is if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States[.]" *Id.* § 2241(c)(3).

### B. Civil Immigration Detention, Removal, Asylum, and Withholding

1. Noncitizens may be detained during the removal process pursuant to 8 U.S.C. §§ 1226 and 1231.

Noncitizens who enter the United States without applying for admission or inspection, are subject to removal. During the removal proceedings, noncitizens may be detained pursuant to Sections 1226 and 1231 under the INA. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021) ("Federal immigration law contains various provisions authorizing the Government to detain aliens during the removal process."). Section 1226 authorizes a noncitizen to "be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) ("[Section] 1226 applies to aliens already present in the United States."); *Miranda v. Garland*, 34 F.4th 338, 346 (4th Cir. 2022) ("The [INA] permits detention of aliens pending the outcome of removal proceedings."). Pending a removal decision (except for the detention of criminal noncitizens 8 U.S.C. § 1226(c)[1]), the

---

[1] "Section 1226(c) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, and it sprang from a 'concer[n] that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers.'" *Nielsen v. Preap*, 586 U.S. 392, 398 (2019) (alteration in original) (quoting *Demore v. Kim*, 538 U.S. 510, 513 (2003)).

noncitizen could be subject to continued detention or released on bond. *See Jennings*, 583 U.S. at 303; 8 U.S.C. § 1226(a). "To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." *Guzman Chavez*, 594 U.S. at 527.

After a notice of removal is provided to the noncitizen, removal proceedings are conducted. *See* 8 U.S.C. §§ 1229–1229a; *Guzman Chavez*, 594 U.S. at 527 ("In the ordinary course, if the Department of Homeland Security (DHS) discovers that an alien is living in the United States without authorization, it may initiate removal proceedings against the alien by sending him a 'notice to appear.'"). Under Section 1229a, "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). The IJ "shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." *Id.* § 1229a(b)(1). At the end of the proceeding and based only on the evidence presented, the IJ "shall decide whether the alien is removable from the United States." *Id.* § 1229a(c)(1)(A). If the IJ determines the noncitizen should be removed, the IJ will inform the noncitizen of the right to appeal that decision. *See id.* § 1229a(c)(5).

Once an IJ issues an order of removal, then the noncitizen is mandatorily detained pursuant to Section 1231. *Compare id.* § 1231(a)(2)(A), *with id.* § 1226(a) (applies when a removal order has not been entered). Section 1231(a) states: "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." *Id.* § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section

1227(a)(2) or 1227(a)(4)(B) of this title." *Id.* § 1231(a)(2)(A). The 90-day removal period commences on the latest of "[t]he date the order of removal becomes administratively final", "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order", or "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* § 1231(a)(1)(B). During this post-removal period, the Supreme Court "has 'read an implicit limitation' into the statute 'in light of the Constitution's demands,' and has held that an alien may be detained only for 'a period reasonably necessary to bring about that alien's removal from the United States.'" *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)); *see id.* at 541 (Section 1231's "focus is the length of time that DHS has to remove an alien once the alien is ordered removed.").

2. Noncitizens may file an application for asylum to avoid removal.

To avoid removal, a noncitizen could seek asylum if the person complies with the procedural requirements and qualifies as a refugee. A noncitizen who is granted asylum *shall not be removed or returned* to the noncitizen's country of nationality or last habitual residence. *See* 8 U.S.C. § 1158(c)(1)(A). A noncitizen who seeks asylum must demonstrate "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." *Id.* § 1158(a)(2)(B). To be granted asylum, the noncitizen must be qualified as a refugee as defined in Section 1101(a)(42)(A). *Id.* § 1158(b)(1)(A). "To establish that the applicant is a refugee within the meaning of [the statute], the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." *Id.* § 1158(b)(1)(B)(i). The United States Court of Appeals for the Tenth Circuit explained that "[t]o qualify for asylum, a noncitizen 'must

demonstrate either past persecution or a well-funded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Addo v. Barr*, 982 F.3d 1263, 1269 (10th Cir. 2020) (citation omitted).

    3.  <u>In the alternative, a noncitizen may file a request to withhold removal.</u>

    Similar to an application for asylum, a request for withholding requires the noncitizen to demonstrate fear of persecution. *See id.* at 1273 ("To qualify for withholding of removal, a noncitizen must make a showing similar to that required for an asylum claim."). Specifically, the noncitizen "must 'establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (citing 8 C.F.R. § 208.16(b)). To qualify for withholding of removal, however, the noncitizen "'must prove a *clear probability* of persecution on account of a protected ground,' a higher standard than the 'reasonable possibility' showing necessary for asylum claims." *Id.* (citation omitted).

    Additionally, in contrast to an application for asylum, a request for withholding of removal does not eliminate the removal order but merely impacts where the noncitizen is removed to. *See Guzman Chavez*, 594 U.S. at 536 ("If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States."). The Supreme Court has "distinguished withholding-only relief from asylum, noting that 'a grant of asylum permits an alien to *remain in the United States* and to apply for permanent residency after one year,' while 'withholding only bars deporting an alien *to a particular country or countries*.'" *Id.* (citation omitted). As explained in the accompanying regulations, nothing precludes the noncitizen from removal "to a third country other than the country to which removal has been withheld or deferred." 8 C.F.R. § 208.16(f).

**ARGUMENT**

**A.  *Lapachi has not demonstrated that he has exhausted his administrative remedies.***

Lapachi's petition is devoid of any indication that he has exhausted his administrative remedies prior to seeking habeas relief. (*See generally* Doc. 1). Rather, Lapachi has merely attached email correspondence from his prior counsel to his petition. (*See id.* at 14–28). The Tenth Circuit has stated, "[t]he exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement." *Garza v. Davis*, 596 F.3d, 1198, 1203 (10th Cir. 2010). However, "[a] narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Id.*

Lapachi has not provided any information as to whether he sought release from the IJ prior to the removal order or after the Order was issued. He has also not provided any argument that exhaustion would be futile. Therefore, the Court should use its discretion to deny Lapachi's petition because Lapachi has not satisfied his burden of demonstrating why exhaustion would be futile. *See Bun v. Wiley*, 351 F. App'x 267, 268 (10th Cir. 2009) (quoting *Clonce v. Presley*, 640 F.2d 271, 273 (10th Cir. 1981)) ("The burden of showing exhaustion rests on the petitioner in federal habeas corpus actions.").

**B.  *Assuming exhaustion would be futile, this Court should dismiss Lapachi's petition because he does not state a constitutional or federal law violation.***

In his petition for habeas, Lapachi claims his continued detention violates due process. (*See* Doc. 1 at 6–7). Lapachi appears to argue the United States has violated due process under the Fifth Amendment because he was not released following the IJ's Order granting withholding. (*See id.* at 2–3). Lapachi is mistaken. Contrary to a grant of asylum, a grant of withholding does not require release from detention. *See Guzman Chavez*, 594 U.S. at 536. Instead, the withholding of removal

simply prohibits the United States from removing Lapachi from the United States to Georgia. The removal order itself remains in effect. Therefore, as an initial matter, any perceived argument that the IJ's Order granting withholding entitled Lapachi to release is without merit.

The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Noncitizens subject to deportation or removal are entitled to due process. *See Zadvydas*, 533 U.S. at 693 (due process applies to all persons including noncitizens in the United States, "whether their presence here is lawful, unlawful, temporary, or permanent"); *Demore v. Kim*, 538 U.S. 510, 523 (2003) (in a case involving Section 1226(c), the Supreme Court explained noncitizens are entitled to due process in deportation proceedings). The issue before this Court is whether Lapachi's continued detention under Section 1231 violates due process. It does not.

Section 1231(a)(1)(A) provides that after an order of removal is issued, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General *shall* detain the alien." *Id.* § 1231(a)(2)(A) (emphasis added). However, Congress recognized that actual removal within ninety days is not always feasible and authorized continued detention beyond the removal period under Section 1231(a)(6) in some circumstances. Section 1231(a)(6) states:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court examined the parameters for continued detention under Section 1231 for those ordered removed who are removable under Section 1227(a)(1)(C), Section 1227(a)(2), or Section 1227(a)(4). The Supreme Court held a noncitizen may be detained only for the period reasonably necessary to bring about their removal. *See Zadvydas*, 533 U.S. at 697–99; *see also Clark v. Martinez*, 543 U.S. 371, 385–86 (2005) (interpreting *Zadvydas*). The Supreme Court explained that once removal of a noncitizen "is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. To determine if detention is no longer authorized, the Supreme Court stated:

> the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.

*Id.* at 699–700. Roughly four years after *Zadvydas*, the Supreme Court extended its analysis in *Zadvydas* to those ordered removed who are deemed inadmissible and those ordered removed who are considered a risk to the community or a flight risk. *See Clark*, 543 U.S. at 378. Following the path of *Zadvydas*, the Tenth Circuit has explained that "[d]etention lasting six months or less is presumptively reasonable; detention lasting beyond six months requires the government to rebut the alien's showing that there is no significant likelihood of removal in the reasonably foreseeable future." *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008).

Currently, Lapachi is detained pursuant to Section 1231. Ex. 1 at 3, ¶ 15. The removal period began on the date the IJ's Order became administratively final, which was March 11, 2025. *Id.* ¶ 16; (*see* Doc. 1 at 13 (the IJ noted the appeal deadline was March 10, 2025)); *see also* 8 U.S.C. § 1231(a)(1)(B)(i); *Guzman Chavez*, 594 U.S. at 534–35 (explaining the order of removal becomes administratively final once BIA reviews the order (or the time to do so expires)). As the

Supreme Court explained, continued detention under Section 1231 is presumptively reasonable for at least six months. *See Zadvydas*, 533 U.S. at 701 (explaining the six-month presumption and stating that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). Six months from March 11, 2025, was September 11, 2025. However, the mere fact that Lapachi has been detained for more than six months does not entitle him to immediate release. *See Abiodun*, 264 F. App'x at 729; *Zadvydas*, 533 U.S. at 701 ("This 6–month presumption, of course, does not mean that every alien not removed must be released after six months."). It is only if the noncitizen (after the six-month period is over) "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

In this case, the United States has contacted other countries for Lapachi's removal. *See* Ex. 1 at 3, ¶¶ 17–20. As stated in the declaration of Michael Ketels, the Deportation Officer assigned to Lapachi's case, the United States is continuing to pursue alternative countries for removal. *See id.* ¶ 20. Based on the efforts of the United States, removal of Lapachi is still reasonably foreseeable. *See id.* ¶¶ 17–20. Lapachi has not presented *any* argument to the contrary. *See Abiodun*, 264 F. App'x at 729 (finding the noncitizen's detention of three years did not constitute indefinite detention based on the facts of the case and the lack of any indication removal would be unsuccessful); *compare id.*, *with Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1118, 1124 (10th Cir. 2005) (the Tenth Circuit, relying on *Clark*, found the noncitizen (whose "status as an inadmissible alien has remained static for the entire twenty-five years he has been present in the United States") should be released because the conditions of Cuba had not changed to warrant a finding that removal was reasonably foreseeable). Accordingly, Lapachi's continued detention at

this time is authorized by statute and does not violate due process. The Court should deny Lapachi's petition for habeas relief.

CONCLUSION

For the reasons stated above, this Court should dismiss Lapachi's petition for habeas corpus. Lapachi has not demonstrated he exhausted his administrative remedies and has not stated a constitutional or federal law violation. Lapachi is not entitled to relief under Section 2241.

Dated September 24, 2025.

Respectfully Submitted,

DARIN D. SMITH
United States Attorney

By: */s/ Jasmine M. Peters*
JASMINE M. PETERS
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that the foregoing *United States of America's Response Brief* was filed and served on Petitioner, *pro se*, on September 24, 2025, as follows:

Daviti Lapachi                                    U.S. Mail – postage prepaid
#A249384280
Natrona County Detention Center
1100 Bruce Lane
Casper, WY 82601

*/s/ Amanda Hudson*
AMANDA HUDSON
United States Attorney's Office